[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 9, 2010
JOHN LEY
CLERK

_____

No. 09-10579
Non-Argument Calendar

_____

D. C. Docket No. 07-80191-CR-KLR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY WAYNE BECKETT,
a.k.a. chelzzz420zzz,
a.k.a. 2*cute*for*school,
a.k.a. yesurifnotcuter,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 9, 2010)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Timothy Wayne Beckett, through counsel, challenges his convictions for (1) possession or attempted possession of images of child pornography on July 18, 2007, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 1); (2) production of (a) four images of child pornography involving victim "JH" on July 9, 2007, (Counts 2-5), (b) four images of child pornography involving victim "MG" on June 2, 2007, (Counts 6-9), and (c) six images of child pornography involving victim "CH" on June 21, 2007, (Counts 10-15), all of which depicted minor males "engaged in the lascivious exhibition of [their] genitals," in violation of 18 U.S.C. § 2251(a); and (3) attempted sexual coercion of the three previously identified minor victims and another minor victim, "CL," in violation of 18 U.S.C. § 2422(b) (Counts 16-19).

On appeal, Beckett argues, first, that the district court erred by denying his renewed motion to suppress subscriber information collected as a result of law enforcement's "exigent circumstances" letters to: internet service providers[1] ("ISPs") and phone companies[2]. Beckett alleges that these exigent circumstances letters violated the terms of the Electronic Communications Privacy Act ("ECPA"), specifically 18 U.S.C. §§ 2702(c)(4) and 2703(c). Second, Beckett

---

[1]The investigators received information from America Online, MySpace, and Comcast.

[2]The investigators received information from BellSouth , T-Mobile, and AT&T.

2

argues that the district court erred by denying his renewed motion to suppress evidence seized from a search of the files on his computers and storage devices because a search warrant only authorized the seizure of the computers themselves. Finally, Beckett argues that the evidence was insufficient to sustain his convictions on all nineteen counts. We find no merit to any of these arguments and affirm the district court.

## I.

Beckett developed a scam to coerce young boys into having sexual relations with him. First, he created a fake MySpace account that appeared to belong to a 17 year old girl named Chelsea. He then contacted four underage boys through MySpace and America OnLine Instant Message ("AIM"), posing as Chelsea. After extensive online conversations as Chelsea, Beckett would send the boys nude and semi-nude photos of a young girl that was supposedly Chelsea. Beckett then convinced the boys to send nude photos of themselves. It was at this point that Beckett would tell the boys that he was actually a man and threaten to disperse the nude photos over the internet, to their friends and family, if the boys did not agree to engage with him in sexual relations.

Beckett contacted JH in the summer of 2007 when JH was 17 years old. After receiving nude photos of JH, Beckett suggested that they meet for oral sex.

3

When JH refused Beckett told him that he was a man and offered an ultimatum: either allow Beckett to perform oral sex on him or else Beckett would send the nude photos of JH to all JH's friends on MySpace. In a panic, JH offered Beckett hundreds of dollars to leave him alone. Beckett continued to insist on oral sex and JH notified the authorities.

CL fell victim to the same scam and informed his parents who then contacted the Boyton Beach Police. Detective Athol opened an investigation after reading the AIM conversation between CL and Beckett. Det. Athol listened to a phone message for CL from the suspect. Det. Athol would later recognize the voice as Beckett's, when meeting with him after arrest.

CH was engaged by Beckett and ultimately sent nude pictures of himself after considerable coaxing. Beckett then posed as the brother of Chelsea and picked CH up at his house, with CH believing that Beckett was taking him to meet Chelsea. After driving to WalMart and cashing his paycheck, Beckett propositioned CH in his car. Beckett convinced CH to take off his shirt and expose his genitals for money. The car was stopped by the police for a traffic infraction, but Beckett threatened CH to keep him from speaking to the police. After CH returned home, Beckett continued to threaten releasing the nude photos if CH did not meet with him again.

4

MG engaged in a very lengthy online conversation with Beckett, who he believed to be a 17 year old girl named Chelsea. MG sent Beckett nude photos of himself and then quickly found out that Beckett was a man. Beckett threatened to send the photos to MG's friends if he did not meet with him for oral sex. However, MG turned the tables on Beckett, threatening to turn over his IP address to an attorney and the authorities. Beckett attempted to send the photos back to MG and then quickly disconnected from the online conversation.

Det. Athol was contacted by the National Center for Missing and Exploited Children to investigate the incident with JH. Det. Athol turned the investigation over to Det. Collins at the Palm Beach Sheriff's Office. While investigating the CL case, Det. Athol noticed that the suspect's screen name, "yesurifnotcuter", was the same as the suspect's screen name in the JH case. Det. Collins and Athol sent information requests related to the screen name to America Online ("AOL") and Comcast. They subsequently received information concerning the connection logs and IP address associated with the screen name. Upon request from the detectives, MySpace provided information regarding the fake page set up by Beckett under the name Chelsea. Det. Athol then sent letters, without a subpoena, to At&T, BellSouth and T-Mobile requesting the source of the phone call to CL, citing exigent circumstances.

A warrant was obtained for the search of Beckett's house, detectives seized computers and computer related media, and Beckett was taken into custody. Upon search of the computer, the police discovered a plethora of child pornography and evidence connecting the computer to conversations with CH, CL, and MG.

Beckett moved to suppress the evidence collected from written requests to the ISPs and the phone companies. The district court denied his motion. Beckett also moved to suppress the evidence discovered during the search of his home computer and the district court denied this motion as well. Beckett now appeals the denial of these motions and the sufficiency of the evidence presented at trial.

**II.**

*A.      The Motions to Suppress Were Properly Denied by the District Court*

A ruling on a motion to suppress presents "a mixed question of law and fact." *United States v. Steed*, 548 F.3d 961, 966 (11th Cir. 2008) (per curiam). We accept the district court's factual findings unless they are clearly erroneous, construing all facts in the light most favorable to the prevailing party below. *Id.* In order for a factual finding to be clearly erroneous, we "must be left with a definite and firm conviction that a mistake has been committed" after reviewing all of the evidence. *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation omitted). The district court's application of the law to the facts is

6

reviewed *de novo*.  *Steed*, 548 F.3d at 966.

      *1.     Investigators Properly Obtained Information from the ISPs and Phone Companies*

The ECPA provides that law enforcement only may require disclosure of subscriber information under certain, limited circumstances, including when there is (1) a warrant, (2) a court order, (3) consent of the subscriber, or (4) an administrative subpoena.  18 U.S.C. § 2703(c).  Additionally, the ECPA authorizes companies storing electronic communications to disclose such information "to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency."  18 U.S.C. § 2702(c)(4).  The government obtained information from the ISPs and BellSouth through the "exigent circumstance" exception carved out by § 2702(c)(4).

Beckett argues that the government obtained information from the ISPs and phone companies in violation of § 2703(c) and § 2702(c)(4).  Beckett argues that exigent circumstances did not exist.  Thus, Beckett asks that we suppress the information obtained from the ISPs and phone companies because of the alleged violations of § 2703(c) and § 2702(c)(4).  Beckett's argument fails for two reasons: (1) there is not a statutory remedy of suppression provided for in the ECPA; and (2) suppression under the Fourth Amendment was not required because Beckett did

7

not have a reasonable expectation of privacy with regards to the information transmitted.

The ECPA does not statutorily provide for suppression of evidence obtained as a result of violations of the Act. *United States v. Steiger*, 318 F.3d 1039, 1051 (11th Cir. 2003) ("[T]he legislative history makes clear that a statutory suppression remedy does not exist for unlawful interceptions of 'electronic communications.'"). "Despite the fact that the ECPA amended numerous sections of the Wiretap Act to include 'electronic communications,' the ECPA did not amend [the subsection of the Wiretap Act that provides a statutory remedy of suppression for violations of the Act]." *Id.* at 1050. The ECPA authorizes an aggrieved party to file a civil action for the "knowing or intentional" violation of the act. 18 U.S.C. § 2707(a). The ECPA further states that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for non-constitutional violations of this chapter." 18 U.S.C. § 2708. Thus, the ECPA does not entitle Beckett to suppression of evidence due to a violation of the terms of the ECPA.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Generally, any

8

evidence obtained in violation of the Fourth Amendment is inadmissible in court and must be suppressed as "fruit of the poisonous tree" for the purpose of deterring police misconduct. *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S. Ct. 407, 417 (1963).

"In order to have evidence suppressed based on a violation of the Fourth Amendment, a claimant has the burden of proving (1) that the search was unlawful and (2) that the claimant had a legitimate expectation of privacy." *United States v. McKennon*, 814 F.2d 1539, 1542 (11th Cir. 1987) (per curiam) (citation omitted). To establish a reasonable expectation of privacy in the object of a challenged search, the defendant must show (1) that he manifested "a subjective expectation of privacy" in that item, and (2) a willingness by society "to recognize that expectation as legitimate." *Id.* at 1543.

The U.S. Supreme Court "consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44, 99 S. Ct. 2577, 2582 (1979). Beckett could not have had a reasonable expectation of privacy in the information that was obtained from the ISPs and the phone companies. The investigators did not recover any information related to content. Rather, the information consisted of the identifying information transmitted during internet usage and phone calls

9

that is necessary for the ISPs and phone companies to perform their services.  It is

unreasonable for Beckett to have been unaware that such information was being

transmitted to the ISPs and phone companies and so he "assumed the risk that the

company would reveal to police the [information]."  *Smith*, 442 U.S. at 744, 99 S.

Ct. at 2582 ("When he used his phone, petitioner voluntarily conveyed numerical

information to the telephone company and 'exposed' that information to its

equipment in the ordinary course of business.").[3]  Accordingly, we affirm in this

respect.

>     2.     *Investigators Did Not Exceed Their Warrant When They Searched the
>            Contents of Beckett's Computer*

Search warrants must be based on "probable cause, supported by Oath or

affirmation, and particularly describing the place to be searched, and the persons or

things to be seized."  U.S. Const. amend. IV.  Even so, "the particularity

requirement must be applied with a practical margin of flexibility, depending on

the type of property to be seized, and that a description of property will be

acceptable if it is as specific as the circumstances and nature of activity under

investigation permit."  *United States v. Wuagneux*, 683 F.2d 1343, 1349 (11th Cir.

---

[3]It is also important to note that Beckett entered into express written agreements with the ISPs and phone companies that contained provisions prohibiting use of their services for illegal activities, such as child pornography and solicitation of minors.  The provisions further provided that the companies would turn over subscriber information to lawful authorities in relation to investigations into such illegal activities.

1982). "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Id.* at 1348. Furthermore, "an affidavit incorporated into a warrant by express reference and attached to and accompanying the warrant can cure ambiguity in the warrant itself." *United States v. Weinstein*, 762 F.2d 1522, 1531 (11th Cir. 1985) (citation omitted).

Contrary to Beckett's assertions, the government did not exceed the bounds of the search warrant when they searched the contents of his computers. The affidavits attached to the application for a search warrant of Beckett's house and computers adequately described the objective of the search. The investigation centered around allegations that Beckett had contacted minors through the internet and on his home computer in efforts to have the minors transmit nude photographs of themselves. The search warrant affidavit explained that a computer and its drives can store thousands of pages of information and that the pertinent information can be stored in any part of the computer under any title or heading. The warrant described with adequate particularity the items to be searched and the objectives of the search. We find that the search of Beckett's computers did not exceed the extent of the warrant. Accordingly, we affirm in this respect.

B.      *The Evidence Presented at Trial Was Sufficient to Sustain All of Beckett's Convictions*

11

We review the sufficiency of the evidence *de novo*. *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1237 (11th Cir. 2009). We consider the evidence "in the light most favorable to the jury verdict, and draw all reasonable inferences and credibility determinations in favor of the Government." *United States v. Ellisor*, 522 F.3d 1255, 1271 (11th Cir. 2008). "[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Merrill*, 513 F.3d 1293, 1299 (11th Cir. 2008) (quotation omitted).

"To sustain a conviction for the crime of attempt, the government need only prove (1) that the defendant had the specific intent to engage in the criminal conduct for which he is charged and (2) that he took a substantial step toward commission of the offense." *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004).

One is guilty under 18 U.S.C. § 2252A if he "knowingly possesses, or knowingly accesses with intent to view any . . . film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or

12

foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(5)(B). Accordingly, to convict a defendant under this provision, the government must prove that (1) the defendant "knowingly . . . possessed the images;" (2) "the images were . . . possessed through interstate commerce;" (3) "the images portrayed real minors engaged in sexually explicit conduct;" and (4) the defendant "was aware of such." *United States v. Hersh*, 297 F.3d 1233, 1254 n.31 (11th Cir. 2002). The government may prove the interstate commerce element by circumstantial evidence. *Id.*

Section 2251(a) makes it a crime for any person

who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct . . . if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

13

18 U.S.C. § 2251(a). We have held that the "most natural reading of this provision is that jurisdiction extends to child pornography (1) produced with the intent that it eventually travel in interstate commerce; (2) produced with materials that have traveled in interstate commerce; or (3) that has traveled in interstate commerce." *United States v. Smith*, 459 F.3d 1276, 1289 (11th Cir. 2006). "Only the first basis for jurisdiction requires any proof of mental state." *Id.*

To demonstrate a violation of § 2422(b), the government must prove that the defendant, using "any facility or means of interstate . . . commerce," including the internet, "acted with a specific intent to persuade, induce, entice, or coerce a minor to engage in unlawful sex," even if the defendant did not actually commit any sex act himself. *Murrell*, 368 F.3d at 1286; 18 U.S.C. § 2422(b).

We have read the briefs and examined the record and find no merit to Beckett's arguments regarding the sufficiency of the evidence. First, the evidence was sufficient to establish that Beckett knowingly possessed child pornography because: (1) the child pornography was on Beckett's computer; (2) it was contained in an organized fashion in folders titled "porn;" and (3) it was stored under the user name "Timmy" (as in Timothy Beckett). *See United States v. Miller*, 527 F.3d 54, 67 (3d Cir. 2008) (listing factors to determine whether a defendant knowingly possesses child pornography). Second, the evidence was

14

sufficient to show that Beckett enticed the victims to create and send pornographic photos because Beckett employed the same tactics on all four victims and ended up receiving the same result, a nude photo of the minor. Beckett's planned actions show that he had specific intentions and was well aware of the type of activity his conversations with the minors implied. Third, Beckett's argument that there was insufficient evidence of coercion because the minors were willing to engage in the activity, is baseless. Beckett posed as a 17 year old girl in order to produce the responses from his victims. Further, after receiving the nude photos of the victims he threatened them in an effort to force them into a sexual relationship. This is the very definition of coercion. The evidence presented was sufficient to sustain Beckett's convictions of all nineteen counts.

Based on our review of the record and consideration of the parties' briefs, we affirm the District Court's denial of Beckett's motions to dismiss and affirm Beckett's convictions.

**AFFIRMED.**